# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| TERI MORRIS, an individual,<br><br>                 Plaintiff,<br>    v.<br><br>CONIFER HEALTH SOLUTIONS LLC, a Texas Corporation; and DOES 1 through 10,<br><br>                 Defendants. | CASE NO. 20-cv-5181-RJB<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION |

THIS MATTER comes before the Court on Defendant Conifer Health Solutions, LLC's[1] Motion to Dismiss and Compel Arbitration ("Motion"). Dkt. 6. The Court has considered the Motion, documents filed in support of and in opposition thereto, and the remainder of the record herein. For the reasons set forth below, the Court should grant the Motion.

---

[1] The Motion provides that "Conifer Health Solutions, LLC is incorrectly named as defendant in this action. The correct employing entity is Conifer Revenue Cycle Solutions, LLC." Dkt. 6, at 2. This order refers to the defendant as "Conifer."

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 1

# I. FACTUAL BACKGROUND

This is a racial discrimination, harassment, and wrongful termination case. Dkt. 1-1. Plaintiff began working for Conifer in approximately June 2015. Dkt. 1-1, at 5. On May 23, 2015, Conifer provided Plaintiff with the Open Door and Fair Treatment Process ("FTP"), which, among other things, provides for final and binding arbitration over issues covered by the FTP. Dkt. 7-1, at 5. The FTP provides a five-step procedural system "that an employee generally must follow to obtain resolution of a problem, concern or dispute:" Step 1 consists of an informal discussion with a supervisor; Step 2 is discussion with a Department head; Step 3 is obtaining a written response from Facility Administration; Step 4 is a FTP Committee decision; and Step 5 is final and binding arbitration . Dkt. 7-1, at 2–3.

The FTP provides terms for the arbitration process, in part, as follows:

> The arbitration will be administered by the American Arbitration Association ("AAA"). The Company and the employee will share the cost of the AAA's filing fee and the arbitrator's fees and costs, but the employee's share of such costs shall not exceed an amount equal to one day's pay (for exempt employees) or eight times the employee's hourly rate (for non-exempt employee) or the local filing fee, whichever is less. The employee and the Company will be responsible for the fees and costs of their own legal counsel, if any, and for their own other expenses and costs, such as costs associated with witnesses or obtaining copies of hearing transcripts.
>
> Exclusions and Restrictions: Certain issues may not be submitted for review (or exclusive review) under the FTP ("Excluded Issues") or may be subject to special restrictions ("Restricted Issues").
>
> Excluded Issues: Workers' Compensation Claims, any claim involving the construction or application of a benefit plan covered by ERISA, and claims for unemployment benefits are excluded from the FTP. In addition are any non-waivable statutory claims, which may include claims within the jurisdiction of the National Labor Relations Board, wage claims within the jurisdiction of a local or state labor

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 2

commissioner, or administrative agency charges before the Equal Employment Opportunity Commission or similar local or state agencies, are not subject to exclusive review under the FTP. This means that employees may file such non-waivable statutory claims with the appropriate agency that has jurisdiction over them if they wish, regardless of whether they decide to use the FTP to resolve them. However, if such agency completes its processing of an employee's claim and the employee decides to pursue further remedies on such claims in a civil action against the Company, the employee must use the FTP (although Steps 1 through 4 may be skipped). In addition, the FTP does not apply to employees covered by a collective bargaining agreement, unless otherwise agreed to by such employees.

<u>Restricted Issues:</u> Sexual harassment Complaints. Due to the sensitive nature of claims of sexual harassment, employees are not required to use Step 1 of the FTP to raise sexual harassment claims if they do not wish to do so. Instead, they should follow the steps in the Company's policy prohibiting sexual or other unlawful harassment. If the employee is not satisfied with the Company's response to a claim for sexual harassment, then the employee must use the FTP to resolve the claim of dispute.

….

<u>Applicable Law and Procedural Rules:</u> The Federal Arbitration Act, 9 U.S.C. § 1, et seq., will govern arbitrations under the FTP. The applicable Employment Dispute Resolution rules of the AAA will govern the procedures to be used in such arbitrations, unless the parties have agreed otherwise.

….

<u>Limitations Periods:</u> Any request for arbitration under the FTP must be made within one year after the event giving rise to the dispute. If the claim was submitted to a federal, state or local agency, then a request for arbitration of that claim must be made within 90 days of the receipt of the agency's decision. However, if a longer limitations period is provided by a statute governing the claim, then the claim will be subject to the longer limitations period provided by the statute.

….

> Confidentiality: All statements and information made or revealed during the FTP are confidential, and neither the employee nor the Company may reveal any such statements or information, except on a "need to know" basis or a permitted or required by law.

Dkt. 7-1, at 5–6.

On May 23, 2015, Plaintiff signed and dated a Handbook and Fair Treatment Process Acknowledgement form, which provides, in part, as follows:

> I acknowledge that I have accessed and reviewed an electronic copy of the Fair Treatment Process. I have also received information about how to access an electronic copy of the Fair Treatment Process via the Company's intranet. I understand that I may print all or parts of the Fair Treatment Process for my use and I may also receive a hardcopy of the Fair Treatment Process from Human Resources. *Except to the extent that any applicable collective bargaining agreement provided otherwise,* I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration of any and all claims and dispute that are related in any way to my employment or the termination of my employment with Conifer. I understand that final and binding arbitration will be the sole and exclusive remedy of any such claim or dispute against Conifer or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to the use of arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ("AAA").
>
> I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out-of pocket expenses for the arbitrator and the administrative cost of the AAA will be an amount equal to one day's pay (if I am an exempt employee), eight times my hourly rate of pay (if I am a nonexempt employee), a mandated cap or the local civil filing fee, whichever amount is the least, and that the Company will pay all of the remaining fees and

administrative costs of the arbitrator and the AAA. I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except in writing by both me and the Company.

A copy of the Employee Handbook and the Fair Treatment Process can be found in the Document Library within the New Employee Portal.

Dkt. 7-2, at 2.

Conifer claims that it requested that Plaintiff stipulate to arbitration, but Plaintiff refused and argued that "(a) the FTP did not have mutual assent because Conifer did not countersign the agreement; and (b) the FTP lacks consideration because it was not signed as a condition of employment." Dkt. 8, at 1.[2]

Conifer filed the instant Motion requesting that the Court dismiss this case and compel arbitration in accordance with the terms of the FTP. Dkt. 6.

Plaintiff filed a response in opposition to the Motion. Dkt. 10. Plaintiff argues that the FTP is substantively and procedurally unconscionable.

Conifer filed a reply in support of the Motion. Dkt. 12.

## II. DISCUSSION

### A. WASHINGTON STATE SUBSTANTIVE LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), on state law claims, federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

---

[2] Although Conifer anticipates these arguments from Plaintiff and discusses them in the Motion, Plaintiff does not discuss or assert these arguments in her response. *See* Dkt. 10.

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 5

## B. ARBITRATION LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C., established a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Creating "a body of federal substantive law of arbitrability," the FAA applies to "any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA applies to any "written provision in … a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Pursuant to the FAA, arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 (1983). "Courts must indulge every presumption 'in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301 (2004) (quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 25). "The party opposing arbitration bears the burden of showing that the agreement is not enforceable." *Id.* at 302.

"Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (emphasis in the original) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the response is affirmative

on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130. If the court determines the matter is subject to arbitration, it may either stay the matter pending arbitration or dismiss it. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

In assessing whether an arbitration agreement or clause is enforceable, the Court should apply ordinary state-law principles that govern the formation of contracts. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217–18 (9th Cir. 2008).

Washington follows the objective manifestation theory of contracts. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503 (2005). "Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Id.* "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* Contracts are viewed as a whole; particular language is interpreted in the context of other contract provisions. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 669–70 (2000).

"The proponent of a contract need only prove the existence of the contract and the other party's manifestation of intent to be bound thereby; the unexpressed subjective intent of either party is irrelevant." *Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermkt., Inc.*, 96 Wn.2d 939, 944 (1982). "In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement, but also from viewing the contract as whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." *Scott*

*Galvanizing Inc., v. Nw. EnviroServs., Inc.*, 120 Wn.2d 573, 580 (1993) (citations and quotations omitted). A party's signature is evidence that the party intended to be bound. *See Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 389 (1993). Once the proponent of a contract meets its burden, the burden shifts to the party seeking to avoid the contract to prove a defense to the contract's enforcement *Id.*; *Retail Clerks Health*, 96 Wn.2d at 943.

### C. ABRITRATION AGREEMENT ANALYSIS

Here, pursuant to the FAA, the Court's analysis is limited to "'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *See Cox*, 533 F.3d at 1119 (9th Cir. 2008).

First, the FTP is a valid agreement to arbitrate. *See* Dkt. 7-2 (providing a Handbook and Fair Treatment Process Acknowledgement form signed by Plaintiff); *see also* Dkt. 13 (providing screenshots showing Plaintiff's apparent understanding of and agreement to the FTP prior to accepting employment with Conifer). Second, The FTP agreement encompasses the dispute at issue because Plaintiff's claims of racial discrimination, harassment, and wrongful termination are not excluded from the FTP. *See* Dkt. 7-1, at 5. Therefore, the Court should compel arbitration consistent with the terms of the FTP.

Plaintiff's arguments that the FTP is procedurally and substantively unconscionability are without merit. Under Washington law, "generally applicable contract defenses, such as … unconscionability, may be applied to invalidate arbitration agreements." *Alder v. Fred Lind Manor* 153 Wn.2d 331, 342 (2004). Whether a contract is unconscionable is a question of law. *Nelson v. McGoldrick,* 127 Wn.2d 124, 131 (1995). Washington courts recognize two forms of unconscionability: "(1) substantive unconscionability, involving those cases where a clause or

term in the contract is alleged to be one-sided or overly harsh and (2) procedural unconscionability, relating to impropriety during the process of forming a contract." *Id.* (quotations omitted). The burden of proving that a contract is unconscionable rests with the party attacking the contract. *Tjart v. Smith Barney, Inc.,* 107 Wn. App. 885, 898 (2001). "Under Washington law, a contract may be invalidated on procedural unconscionability or substantive unconscionability grounds." *Id.*

1. Procedural Unconscionability

Procedural unconscionability is the lack of meaningful choice, considering all the circumstances surrounding the transaction, including (1) the manner in which the contract was entered, (2) whether each party had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print. *Zuver v. Airtouch Commc'ns, Inc.,* 153 Wn.2d 293, 303 (2004) (citations and quotations omitted). The Supreme Court of Washington cautioned that "these three factors [should] not be applied mechanically without regard to whether in truth a meaningful choice existed." *Id.*

Plaintiff argues that the FTP is procedurally unconscionable because it was a shrouded adhesion contract "found in a five-page section of the Defendant's Employee Handbook." Dkt. 10. However, it appears that "Conifer created a process to ensure that the arbitration terms and the employee handbook are reviewed and understood." Dkts. 12, at 2; and 13. Conifer provides screenshots indicating that Plaintiff had opened and reviewed the handbook and understood, among other things, that she agreed "to forego any right [she and Conifer] may have had to a jury trial on issues covered by the Fair Treatment Process." Dkt. 13, at 3.

It appears that (1) the FTP was not entered into in an unfair manner, (2) each party had a reasonable opportunity to understand the terms of the FTP, and (3), far from being hidden in a

maze of fine print, the arbitration agreement terms of the FTP were remarkably transparent and understandable.

Therefore, Plaintiff has not shown that the FTP was procedurally unconscionable.

2. Substantive Unconscionability

"Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh." *Luna v. Household Fin. Corp. III,* 236 F. Supp. 2d 1166, 1177 (W.D. Wash. 2002) (citing *McGoldrick,* 127 Wn.2d at 131 (quoting *Schroeder,* 86 Wn.2d at 260, 544 P.2d 20)). "'Shocking to the conscience,' 'monstrously harsh' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Id.* (quoting *Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention,* 16 Wn. App. 439, 444 (1976)).

Plaintiff contends that the FTP is substantively unconscionable because it (1) contains a confidentiality clause and (2) effectively shortens the statute of limitations for claims. Plaintiff's arguments are without merit. Dkt. 10.

First, a confidentiality clause is not unconscionable per se. *See Zuver,* 153 Wn.2d at 314 ("courts have accepted confidentiality provisions in many agreements"). Moreover, the FTP's confidentiality clause appears flexible, permitting exceptions "on a 'need to know' basis or a [*sic*] permitted or required by law." Dkt. 7-1, at 6. The FTP's confidentiality clause does not appear unconscionable.

Second, Plaintiff's contention that the FTP effectively reduces the statute of limitations period for claims is flatly unsupported by the FTP's terms:

> Limitations Periods: Any request for arbitration under the FTP must be made within one year after the event giving rise to the dispute. If the claim was submitted to a federal, state or local agency, then a request for arbitration of that claim must be made

> within 90 days of the receipt of the agency's decision. *However, if a longer limitations period is provided by a statute governing the claim, then the claim will be subject to the longer limitations period provided by the statute.*

Dkt. 7-1, at 6 (emphasis added).

Therefore, Plaintiff has not shown that the FTP is substantively unconscionable.

3. Conclusion

Therefore, for the reasons set forth above, the Court should compel arbitration consistent with the terms of the FTP and stay proceedings in this case. The parties should file a status report, in writing, following completion of arbitration, but no later than October 1, 2020.

## III. ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant Conifer Health Solutions, LLC's Motion to Dismiss and Compel Arbitration (Dkt. 6) is **GRANTED** as follows:
    - Plaintiff shall submit her claims to arbitration pursuant to the arbitration agreement;
    - Proceedings in this case are **STAYED** pending completion of arbitration; and
    - The Parties shall file a status report, in writing, following completion of arbitration, but no later than **October 1, 2020.**

/

/

/

/

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 2nd day of April, 2020.

ROBERT J. BRYAN
United States District Judge

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 12